UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRIEN CLAYTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-02164-JRS-DLP |
| | ) |
| ARAMARK CORRECTIONAL SERVICES, LLC, | ) |
| DAVID MASON, | ) |
| DUSHAN ZATECKY, | ) |
| DUANE ALSIP, | ) |
| MICHAEL CONYERS, | ) |
| | ) |
| Defendants. | ) |

**Order Granting Defendants' Motions for Summary Judgment and
Directing Entry of Final Judgment**

Plaintiff Brien Clayton, an Indiana prisoner incarcerated at the Pendleton Correctional Facility ("PCF"), filed this civil rights action under 42 U.S.C. § 1983 alleging that the defendants, Aramark Correctional Services, LLC, ("Aramark"),[1] Captain David Mason, Superintendent Dushan Zatecky, Assistant Superintendent Duane Alsip, and Major Michael Conyers, violated his constitutional rights by subjecting him to unconstitutional conditions of confinement during prison lockdowns. Dkt. 7 at p. 4. Specifically, Aramark is alleged to have a policy or practice of providing deficient food to inmates of the H Unit during lockdowns. Meanwhile, the individual defendants are alleged to have restricted Mr. Clayton's access to electricity, running water, and warm food during lock downs. Dkt. 7 at p. 3-4.

The defendants seek summary judgment arguing that Mr. Clayton failed to exhaust his available administrative remedies before filing this lawsuit, as required by the Prison Litigation

---

[1] The **clerk is directed** to update the docket to reflect that defendant Aramark Corporation is really "Aramark Correctional Services, LLC."

1

Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Aramark filed a motion for summary judgment, dkt. [29], and defendants Mason, Zatecky, Alsip, and Conyers (hereinafter "State Defendants") filed a motion for summary judgment, dkt. [33]. Mr. Clayton responded to the defendants' motions, dkt. [36], and the two groups of defendants submitted their replies. Dkts. [37] and [38]. The defendants' motions for summary judgment are now ripe for decision.

## I.     Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying" designated evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, "the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a *genuine issue for trial*.'" *Cincinnati Life Inc. Co. v. Beyrer*, 722 F.3d 939 (7th Cir. 2013) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Generally, "a plaintiff may not rely on mere allegations or denials in his complaint when opposing a properly supported motion for summary judgment." *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020) (citing *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996)). Generally, "[a]dmissibility is the threshold question because a court may consider only admissible evidence

in assessing a motion for summary judgment," *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). An unsworn pleading that is not signed under the penalty of perjury is inadmissible for purposes of defeating a motion for summary judgment. *See Owens v. Hinsley*, 635 F.3d 950, 954-55 (7th Cir. 2011) (noting that a verified response in opposition to motion for summary judgment was admissible even though it was not an affidavit because "a declaration under [28 U.S.C.] § 1746 is equivalent to an affidavit for purposes of summary judgment"). However, "a verified complaint—signed, sworn, and submitted under penalty of perjury—can be considered 'affidavit material' provided the factual allegations otherwise satisfy the affidavit criteria specified in Rule 56 of the Federal Rules of Civil Procedure and the declarant complies with 28 U.S.C. § 1746, which sets forth the requirements for verification under penalty of perjury." *James,* 959 F.3d at 314 (quoting *Ford,* 90 F.3d at 247).

## II.  Statement of Facts

The following statement of facts was evaluated pursuant to the standard set forth above. Because neither Mr. Clayton's complaint nor his response in opposition were verified under penalty of perjury, his pro se filings will not be treated as admissible testimony, although all of his arguments are considered. *See Owens,* 635 F.3d at 954-55.

### A. Indiana Department of Corrections' Offender Grievance Process

At the time of the alleged incident, PCF had a grievance program pursuant to Indiana Department of Correction ("IDOC") policy. Dkt. 33-1 at ¶ 5. The procedure in place at the time of the initial incident is entitled Offender Grievance Process, Policy and Procedure 00-02-301 ("IDOC Policy"). Dkts. 31-2, 33-2. The applicable Offender Grievance Process went into effect on October 1, 2017. *Id.*

The intent of the Offender Grievance Process is to provide a mechanism for every offender to express complaints and topics of concern, for the efficient and fair resolution of legitimate offender concerns, and for facility and IDOC management to be better informed and better able to carry out the IDOC's mission and goals. Accordingly, information on the Offender Grievance Process is included with the Admission & Orientation Paperwork for offenders entering Pendleton Correctional Facility ("Pendleton"). A copy of the policy for the Offender Grievance Process is also available to offenders through the Law Library. Dkt. 31-1 at ¶ 6.

The Offender Grievance Process consists of one informal step and three formal steps. Dkt. 31-1 at ¶ 7.

First, before filing a grievance, an offender is required to attempt to resolve a complaint informally with staff members and provide evidence of this effort (e.g., "To/From" correspondence, State Form 36935, "Request for Interview"). Dkt. 31-2 at § X.

Second, if the offender is unable to obtain a resolution informally, the offender may submit a formal grievance to the Offender Grievance Specialist. Dkt. 31-2 at § XI. The appropriate form for submitting grievances (State Form 45471, OFFENDER GRIEVANCE) is available upon request to inmates through any staff member at the facility. Dkt. 31-1, Bodkin Dec., ¶ 10.

The Offender Grievance Specialist may reject a grievance form and return it to the offender unfiled if it was not submitted within the ten (10) business day time limit. Dkt. 31-2 at XI.B.

The Offender Grievance Specialist must either return an unacceptable form or provide a receipt for an accepted form. If an offender does not receive either a receipt or a rejected form from the Offender Grievance Specialist within five (5) business days of submitting it, the offender shall notify the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the

Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within five (5) business days. Dkt. 31-2 at XI.

Third, if the offender is dissatisfied with the grievance response, he may appeal the response by completing the appropriate sections of State Form 45473, "Grievance Appeal" within five (5) business days from the date of receipt of the grievance response. Dkt. 31-2 at § XII.

Fourth, if the offender is not satisfied with the Warden's/designee's appeal response, the offender may then request that the appeal be sent to Central Office, Department Offender Grievance Manager, which is the final appeal level. Dkt. 31-2 at § XIII.

### B. Mr. Clayton's Use of the Grievance Process

Mr. Clayton was incarcerated at PCF during the time the allegations listed in his Complaint took place. Each Offender Grievance received at PCF should be logged electronically, as outlined in the Offender Grievance Process. Dkt. 31-2 at § III.H and § XI.B. A copy of Mr. Clayton's Grievance History during his incarceration at Pendleton Correctional Facility has been submitted. Dkt. 33-3. It reflects that Mr. Clayton did not submit any formal grievances that were accepted and logged by the facility. Dkt. 33-1, Bodkin Dec., ¶ 23.[2]

Mr. Clayton's complaint concerns the conditions in H Unit at PCF during lockdowns. Dkt. 2 at p. 5. There are three separate time periods in December 2018 and January 2019 at issue: December 17, 2018 – December 27, 2018; December 31, 2018 – January 8, 2019; and January 11, 2019 – January 15, 2019. Dkt. 2 at p. 4. H unit was also on lockdown on March 6-11, April 17-24, and May 7-9, 2019. Dkt. 2 at p. 5. During all of those times, Mr. Clayton alleges his conditions of confinement were unconstitutional.

---

[2] Mr. Clayton's response in opposition attaches requests for interviews and copies of returned grievances related to other concerns. These rejected grievances were returned unlogged. These examples do not create a material fact in dispute. Dkt. 36-1.

5

IDOC Records indicate that Mr. Clayton filed an informal grievance on a request for interview form very loosely related to the allegations in this civil action. Specifically, he complained about the lock down that occurred on December 31, 2018. That informal grievance was dated January 9, 2019. Dkt. 33-4 at p. 5.

One rejected formal grievance related to Mr. Clayton's allegations in the complaint was located in the IDOC's records. Dkt. 31-4 at p. 2. The grievance sets forth the following concern:

> Me along with other inmates were locked down for a incident that happened, it was resolved in 1 to 2 days, the people involve[d] were removed an gone and this administration without giving me and other's a conduct report still kept us on locked down for something like a week. The food that they were serving us was cold, had me feeling sick, vomiting and having diarrhea. These actions over exceeds the punishment and violate my and our due process rights.

Dkt. 31-4 at p. 2.

This grievance was dated January 14, 2019, but it was not received stamped by the grievance counselor until March 20, 2019. *Id.* This formal grievance was rejected by the grievance counselor on March 20, 2019, citing the following reasons: 1) the formal grievance was untimely, 2) the formal grievance appeared to be submitted on behalf of another person or group, 3) the formal grievance form was not completely filled out (it did not include a statement of the relief sought), and 4) the complaint contains multiple issues or events. Dkt. 31-4 at p. 1. The return of grievance form states, "If you choose to correct the problem(s) listed above, you must do so and re-submit this form within five (5) business days." *Id.*

Mr. Clayton attempted to appeal the return of his grievance on March 26, 2019. He stated that he doesn't agree with the grievance return because one of the correctional officers misplaced his grievance which is why it was late. Dkt. 33-4 at p. 2. On April 1, 2019, the appeal was returned unfiled and Mr. Clayton was informed that because his formal grievance was never accepted, logged, and denied, he could not yet appeal the Grievance Specialist's decision. Dkt. 33-4 at p 1.

### III. Discussion

The defendants seek summary judgment arguing that Mr. Clayton failed to exhaust his available administrative remedies before he filed this lawsuit as required by the PLRA. 42 U.S.C. § 1997e(a); *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). In response, Mr. Clayton contends that he could not exhaust his claims because staff mishandled his "remedies." Dkt. 36 at p. 1.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004). *See also Ross*, 136 S. Ct. at 1057-58 (explaining why "all inmates must now exhaust all available remedies" and concluding that "[e]xhaustion is no longer left to the discretion of the district court" (internal quotation marks and citation omitted)).

While the PLRA has a strict exhaustion requirement, it also "contains its own, textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858. "[T]he ordinary meaning of the word

'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* at 1858 (internal quotation omitted). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, and 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. It is the defendants' burden to establish that the administrative process was available to Mr. Clayton. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendant must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

The designated evidence shows that Mr. Clayton attempted to file one formal grievance related to his allegations in the complaint. This grievance was dated January 14, 2019, but the undisputed evidence is that it was not received by the grievance counselor until March 20, 2019.

In response, Mr. Clayton argues that he provided corrected grievances to PCF staff with the expectation that they would turn them in and also filed informal grievances on staff for not returning his informal grievances in a timely manner. Dkt. 36 at 1. Mr. Clayton further contends that there is no grievance box accessible to inmates while on lock down and, as a result, he was dependent on the correctional officers to handle his grievances. Dkt. 36 at p. 2. These statements are not submitted under penalty of perjury, nor are they supported by citations to admissible evidence.

In response to Mr. Clayton's assertion that prison staff is responsible for any delay in the submission of his grievances, the State Defendants argue that Mr. Clayton could have requested an extension of time to file a belated Offender Grievance consistent with the Offender Grievance Process, but that he failed to do so. Dkt. 37 at p. 2; dkt. 33-2 at § XIV.

Aramark further contends that Mr. Clayton's argument that he was unable to timely submit a grievance because he was on lockdown and reliant on correctional officers to submit his grievance is directly contradicted by the complaint. Aramark argues that the plaintiff had ten business days from the date of the event to submit a grievance and that Mr. Clayton had time between lock down periods to submit his grievances. Notably no more than 10 business days pass in any period cited to in the complaint.[3]

In addition, the Court notes that the grievance policy states that if an offender submits a grievance to be filed, but does not receive either a receipt or a rejected form from the Offender Grievance Specialist within five (5) business days of submitting it, the offender shall notify the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within five (5) business days. Dkt. 31-2 at XI. In other words, even if Mr. Clayton had timely provided a formal grievance to prison staff for filing (there is no evidence he did), he should have known within 5 days whether or not that grievance had been received and, if it was not, he had an available avenue to continue to pursue his administrative remedies.

Finally, even if the grievance had been timely submitted, there were several other deficiencies with the grievance. Each of the deficiencies was identified and a response was provided to Mr. Clayton. Mr. Clayton had the opportunity to correct these deficiencies and resubmit the grievance, but failed to do so.

The defendants have met their burden of proving that the administrative grievance process was available to Mr. Clayton. Unfortunately for Mr. Clayton he never submitted a complete and

---

[3] December 17, 2018, - December 27, 2018; December 31, 2018, - January 8, 2019; and January 11, 2019 – January 15, 2019. Dkt. 2 at p. 4. H unit was also on lockdown during the following time periods: March 6-11, 2019; April 17-24, 2019; and May 7-9, 2019. Dkt. 2 at p. 5.

timely formal grievance related to the claims raised in the complaint even though he had the opportunity to do so. Because he did not do so, he failed to exhaust those administrative remedies that were available to him. As such, the Defendants are entitled to summary judgment in their favor.

### IV. Conclusion

As explained above, the defendants have demonstrated that Mr. Clayton failed to exhaust the administrative remedies available to him before filing this lawsuit. The consequence, in light of § 1997e(a), is that this action should not have been brought and must now be dismissed without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (holding that "all dismissals under § 1997e(a) should be without prejudice").

The defendants' motions for summary judgment, dkts. [29] and [33], are **granted**. This action is dismissed without prejudice. Final judgment shall now issue.

IT IS SO ORDERED.

Date: 7/2/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

BRIEN CLAYTON
212108
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Marley Genele Hancock
INDIANA ATTORNEY GENERAL
marley.hancock@atg.in.gov

Brandon Alan Skates
INDIANA ATTORNEY GENERAL
brandon.skates@atg.in.gov

Georgianna Q. Tutwiler
HUME SMITH GEDDES GREEN & SIMMONS
gquinn@humesmith.com